738 So.2d 1266 (1999)
B.C.M.
v.
J.T. et al.
W.J.
v.
J.T. et al.
2971321 and 2971387.
Court of Civil Appeals of Alabama.
July 2, 1999.
Randall W. Nichols of Massey & Stotser, P.C., Birmingham, for B.C.M.
William W. Werdehoff of Werdehoff & Werdehoff, Huntsville, for W.J.
J. Coleman Campbell and Lynn S. Merrill, asst. attys. gen., Department of Human Resources.
ROBERTSON, Presiding Judge.
On May 1, 1995, M.J.C. filed a petition seeking custody of M.A.M., her granddaughter, who was then four years old. M.J.C. alleged that her daughter, B.C.M., was incarcerated and that a complaint for divorce was pending in Georgia between B.C.M. and her husband, D.M. M.J.C.'s complaint further alleged that D.M. was 69 years old; that he was not the biological father of the child; and that he had abused the child, both emotionally and physically.
D.M. answered M.J.C.'s petition on June 5, 1995, alleging that M.A.M. had been born during his marriage to B.C.M., that he had been granted temporary custody of M.A.M. by an agreement with B.C.M., pending the disposition of the Georgia divorce complaint, and that he had not abused the child. On July 25, 1995, the trial court, after conducting a hearing and reviewing the documents filed in the Georgia divorce action, determined that M.A.M. should be placed in the trial court's custody and placed in foster care. The court appointed a guardian ad litem for M.A.M. and set a further hearing on July 27, 1995, to determine custody, subject to a "crisis investigation" by the Madison County Department of Human Resources ("DHR").
On July 27, 1995, C.L., claiming to be M.A.M.'s biological father, moved to intervene in the proceedings and petitioned for custody. On January 17, 1996, M.J.C. moved to dismiss her petition for custody. The trial court, after holding a hearing on the pending motions on February 20, 1996, entered an order continuing the case for further proceedings. On April 8, 1996, J.T., B.C.M.'s first cousin, moved to intervene and petitioned for custody of M.A.M. and a termination of parental rights as to M.A.M. During this litigation, DHR investigated D.M.'s home and disapproved it for child placement. C.L. refused to allow a DHR evaluation of his home and later moved to dismiss his petition for custody. On May 6, 1996, the trial court granted C.L.'s motion to dismiss his petition for custody, granted J.T's motion to intervene, and conducted a further hearing on the case.
On May 16, 1996, the trial court entered an order based on the testimony presented *1267 at the May 6, 1996, hearing. The court noted that there was evidence before it indicating that D.M. and B.C.M. were visiting M.A.M. and "stating certain things to the child which are not reflective of her best interest." In pertinent part, the court's order stated:
"(1) No party to this proceeding nor their attorney shall be allowed to contact the child [M.A.M.] in any way whatsoever whether by personal visit, by telephone, at her residence, at their church, or at any other place where she may be pending further orders of this Court.
"(2) The Madison County Department of Human Resources ... is hereby enjoined by this Court from disclosing to any party to this proceeding, including their attorneys, the whereabouts of [M.A.M.], her telephone number, her foster parents' telephone number, her residence, the place where she may attend preschool, church or any other place where she may regularly reside pending further orders of this Court.
"(3) The Madison County Department of Human Resources shall cause the Marengo County Department of Human Resources in Marengo County, Alabama, to perform a home study and evaluation on the home of [J.T.] of Demopolis, Alabama, and to copy this Court upon same."
The trial court continued the case for further proceedings.
On June 27, 1996, W.J., B.C.M.'s brother, filed a motion to intervene in the case, seeking custody of M.A.M.. The trial court granted the motion to intervene, and DHR also performed a home-study evaluation on W.J.'s home. In July 1996, both B.C.M. and D.M. filed motions with the trial court to reinstate their visitation. On November 22, 1996, the trial court granted M.J.C.'s motion to dismiss her petition. On February 18 and 19, 1997, the court held a hearing and received extensive testimony from the parties and from various witnesses. The trial court, in November 1997, denied B.C.M. and D.M.'s motions to reinstate visitation.
On April 6, 1998, the trial court issued its final judgment. The judgment noted B.C.M.'s long history of drug use and accompanying felony convictions; the judgment also noted D.M.'s prior history of drug use and felony convictions. The judgment noted that J.T. was an unmarried medical doctor and the adoptive mother of B.C.M.'s oldest child, T.T.[1] The trial court noted that at the time of trial, the child T.T. was a resident at a treatment facility for children with emotional difficulties. With respect to W.J. the judgment stated:
"The Intervenor, [W.J.], maintains a close relationship with the Plaintiff, [M.J.C.], his mother, and the Defendant [B.C.M.] his sister. He testified at trial that, if awarded custody of [M.A.M.], he would allow continued contact with the Defendant and [M.A.M.]. The Court finds this to be contrary to the best interest of the child."
The judgment terminated B.C.M. and C.L.'s parental rights as to M.A.M.; denied the petitions for custody filed by D.M., J.T., and W.J.; denied all parties' claims for visitation with M.A.M.; and vested full custody of M.A.M. in DHR.
W.J. and B.C.M. filed post-judgment motions seeking to alter, amend, or vacate the trial court's judgment. Both appealed after the trial court had denied their post-judgment motions.
Both appeals specifically challenge the trial court's judgment terminating parental rights. We need not address the facts of this case or the factual arguments advanced by the appellants, given § 12-15-30(b)(6), Ala.Code 1975. That statute provides:
"(b) The [juvenile] court shall also exercise exclusive original jurisdiction of the following proceedings, which shall be governed by the laws relating thereto:

*1268 ". . . .
"(6) Termination of parental rights."
In N.W.S.S. v. S.D.S., [Ms. 2970947, March 12, 1999] ___ So.2d ___ (Ala.Civ.App. 1999), this court held that the operation of § 12-15-30 deprives the circuit courts of subject-matter jurisdiction with respect to the termination of parental rights.
A close examination of the record in this case shows that the protracted litigation in this case has been conducted entirely in the circuit court. We conclude that the circuit court did not have subject-matter jurisdiction to address the issue of the termination of parental rights. Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for that court to transfer this case to the juvenile court.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
NOTES
[1] BC.M.'s parental rights to T.T. were terminated in an earlier judicial proceeding.